IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARTIN AGUILAR,

    Plaintiff,

vs.                                                       No. 1:14-CV-00808 JAP-LAM

HARDING COUNTY, NEW MEXICO,
REBECCA SMITH, NICK ARCHULETA,
and HARDOLD MACKEY, individually
and in their official capacities as
HARDING COUNTY COMMISSIONERS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    On September 4, 2014, Plaintiff filed a COMPLAINT FOR VIOLATION OF CIVIL RIGHTS ("Complaint") (Doc. No. 1). On October 3, 2014, Defendants filed DEFENDANTS' MOTION TO DISMISS IN LIEU OF ANSWER ("Motion to Dismiss") (Doc. No. 8). On October 27, 2014, Plaintiff filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DOC 8] ("Response") (Doc. No. 13). On November 13, 2014, Defendants filed DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL ("Reply") (Doc No. 14). After considering the parties' briefs and the applicable law, the Court will deny Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

    Plaintiff's Complaint alleges the following facts as grounds for his claims under 42 U.S.C. § 1983 for First Amendment retaliation and the New Mexico Whistleblower Act (Whistleblower Act), N.M. STAT. ANN. § 10-16C-1 *et seq.* (West 2013):

> [¶6] [i]n the fall of 2013 the Plaintiff, an employee of the New Mexico Department of Transportation ("NMDOT"), was approached by the Defendants concerning the possibility of becoming the Harding County Road Superintendant ("Road Superintendant").
>
> [¶7] The Plaintiff subsequently resigned his position with the NMDOT and assumed the position of Road Superintendent on December 30, 2013.
>
> [¶8] Soon after assuming his position as Road Superintendent, and as part of the process of familiarizing himself with the Harding County Road Department budget, the Plaintiff discovered that for a period of years Harding County and the individual Defendants had obtained state funding for specific road projects and then used those funds for other purposes, including funding the road department in general, and maintenance and repair of other county roads, contrary to NMDOT policy and New Mexico state law.
>
> [¶9] After discovering these issues, the Plaintiff approached Defendants Smith, Archuleta, and Mackey and request [sic] that the issue be addressed by informing the NMDOT and taking appropriate budgetary steps to address the prior illegal actions and to properly fund the Road Department.
>
> [¶10] When it became clear that none of the Defendants were going to take any steps to address the illegal conduct going on in the County Road Department, the Plaintiff contacted the office of the New Mexico State Auditor in late February of 2014 and requested that it begin an investigation of the financial affairs of the Harding County Road Department.
>
> [¶11] After the Plaintiff repeatedly pressed the individual Defendants to address the Road Department issues and seek an independent auditor, and [sic] refused to participate in the continuing illegal conduct, the Plaintiff received a letter on June 10, 2014 signed by each of the individual Defendants, informing him that his position as Harding County Road Superintendent was terminated effective immediately.

Complaint ¶¶ 6–11. Plaintiff seeks lost wages, employment benefits, and damages for emotional and psychological trauma for Defendants' alleged violations of his First Amendment rights and violations of the Whistleblower Act. Complaint ¶¶ 15, 20.

**LEGAL STANDARD**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not plead with specificity the facts which give rise to a claim; nonetheless, it must provide a sufficient foundation for concluding that the named defendants played more than a conceivable role in the complained-of conduct. *Id.* at 680. In other words, the complaint must do something, however minimal, to "nudge" its claims from the realm of the conceivable to the realm of the plausible. *Id.*

In evaluating a motion to dismiss a under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded facts [in the complaint], as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party[.]" *Archuleta v. Wagner*, 523 F.3d 1278, 1282–83 (10th Cir. 2008) (quotation and alteration omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

As the United States Supreme Court explained in *Iqbal*, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The *Iqbal* court distilled the Rule 12(b)(6)

3

inquiry into two questions: (1) whether the Plaintiff's allegations of fact are not legal conclusions; and (2) whether the Plaintiff's allegations of fact are plausible. *Id.* at 678–79.

## DISCUSSION

**I.     Plaintiff's Complaint alleges sufficient facts to support a claim under 42 U.S.C. § 1983 for First Amendment retaliation.**

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted). Whether a public employee is entitled to First Amendment protection from employment retaliation turns on two questions: (1) whether the employee "spoke as a citizen on a matter of public concern[,]" *Id.* at 418 (citation omitted), and if so, "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* (citation omitted).

The Tenth Circuit Court of Appeals directs courts to apply a two-step inquiry: first, does "the speech at issue touch[] on a matter of public concern[?]" *Casey v. West Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). If it does, then the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Id.* (quotation omitted). Essentially, the court must determine whether the plaintiff's speech which caused the defendant to retaliate was made in plaintiff's capacity as a citizen speaking on matters of public concern or as an employee under his or her official duties. *Id.* at 1328.

In this case, Defendants hired Plaintiff to be Harding County's road superintendent. Road superintendents are "subject to supervisory powers in the board of county commissioners" and

"have charge of all work of construction and maintenance of county roads and bridges, and the purchasing of equipment, materials and supplies therefor." N.M. STAT. ANN. § 67-4-3 (West 2013). Plaintiff alleges that he informed his direct supervisors, Defendants Smith, Archuleta, and Mackey, of misappropriations of state funding for specific road projects. Complaint ¶¶ 8–9. After the Defendants failed to take any action, Plaintiff reported the misappropriations to the New Mexico State Auditor. Complaint ¶ 10. Whether Plaintiff's Complaint states sufficient factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) thus depends on (a) whether Plaintiff's reports of misappropriation of public funds touch on matters of public concern; and (b) whether Defendants had an adequate justification for treating Plaintiff any differently than a member of the general public for (1) reporting the misappropriations to his supervisors or (2) reporting the misappropriations to the State Auditor. The Court will address these questions in turn.

    a.   <u>Whether Plaintiff's speech touches on a matter of public concern</u>

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014). Speech that relates to "corruption in a public program and misuse of state funds…obviously involves a matter of significant public concern." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006)).

Defendants argue that Plaintiff's idea of "misappropriation" is simply a misunderstanding of the "accounting procedures" employed by Defendants. Motion to Dismiss at 7. But the sufficiency of Plaintiff's factual allegations does not turn on whether the Court credits Plaintiff's or Defendant's conclusory descriptions of the facts alleged in Plaintiff's Complaint. Rather, it is

5

whether reasonable inferences from those facts could support a claim for relief. Plaintiff alleges that "Defendants had obtained state funding for specific road projects and then used those funds for other purposes, including funding the road department in general, and maintenance and repair of other county roads[.]" Complaint ¶ 8. Insofar as these allegations permit Defendants' preferred inference that Plaintiff was complaining about permissible accounting practices, they likewise permit an inference of official wrongdoing. And since Plaintiff as the non-moving party is entitled to reasonable inferences in his favor on a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the Court will not dismiss Plaintiff's claim on this basis alone.

In sum, Plaintiff's Complaint makes factual averments that he spoke on a matter of public concern when he reported misappropriations of state funds to the State Auditor. Thus Plaintiff's Complaint will withstand a motion to dismiss under Rule 12(b)(6) if the Complaint makes a sufficient showing on step two of the *Morris* inquiry: whether Defendants had no adequate justification for treating Plaintiff differently than a member of the general public.

    b. <u>Whether Defendants had an adequate justification for treating Plaintiff differently from a member of the general public.</u>

When a public employee speaks under an official duty, then the employee is "not speaking as [a] citizen[] for First Amendment purposes," and is therefore not protected by the First Amendment for retaliation brought about by this speech. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The underlying rationale for this rule is that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 422.

The Tenth Circuit Court of Appeals applies the following five-factor test to evaluate whether terminating a public employee in retaliation for the employee's speech violates the First Amendment:

>   (1)   whether the speech was made pursuant to an employee's official duties;
>   (2)   whether the speech was on a matter of public concern;
>   (3)   whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
>   (4)   whether the protected speech was a motivating factor in the adverse employment action; and
>   (5)   whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2001) (quoting *Dixon v. Kirkpatrick,* 553 F.3d 1294, 1302 (10th Cir. 2009)). The first three factors are legal questions for this Court to decide; the final two are questions of fact. *Id.* Because the Court has already concluded that Plaintiff's allegations of misappropriation touch on matters of public concern, the issue is whether Plaintiff's Complaint sets forward sufficient allegations on the four remaining factors.

  (1) Whether the speech was made pursuant to Plaintiff's official duties as Road Superintendent

New Mexico law provides that road superintendents "shall have charge of all work of construction and maintenance of county roads and bridges, and the purchasing of equipment, materials, and supplies therefor." N.M. STAT. ANN. § 67-4-3 (West 2013). A road superintendent is subject to "supervisory powers" of the board of county commissioners that hired him. *Id.*

Defendants argue that Plaintiff's complaints were made under his official duties as a road supervisor because the statements concerned "issues within his own department[.]" Motion to Dismiss at 7. Under Defendants' reading of *Morris*, public employees are only entitled to First

7

Amendment protection for speech wholly unrelated to their employment. But this would severely limit public employees' ability to contribute their specialized perspective to public discourse. *See San Diego v. Roe*, 543 U.S. 77, 82 (2004) (*per curiam*) ("public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues." (citation omitted)) The real question is whether the speech was a required aspect of Plaintiff's official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Plaintiff's reports to his direct supervisors concerned a required aspect of his position as a road superintendent. Plaintiff had a legal responsibility to supervise the payment for and provision of road building within Harding County, and reviewing the county budget would fall within this general responsibility. N.M. STAT. ANN. § 67-4-6 (West 2013). Plaintiff counters that "[i]t is not now, nor has it ever been, an ordinary part of a Superintendent's job to identify fraud in road department funding[.]" Reply at 4. But Plaintiff's reports of misconduct to his superiors did not arise from a duty to investigate fraud; instead, they arose from his general supervisory role over appropriations of funds for the construction and maintenance of roads in Harding County and his duty to the County Commission.

But this is not the end of the matter. Plaintiff also reported the misappropriations to the New Mexico State Auditor, something Section 67-4-6 does not require Plaintiff to do. Since Plaintiff had no obligation to report the misappropriations, his reports to the State Auditor fall outside Plaintiff's obligations as road superintendent. In *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323 (10th Cir. 2007), the court held that plaintiff Casey's complaints to the State Attorney General, who was not in Casey's direct chain of command, fell outside her official

8

duties. *Id.* at 1332. As in this case, Casey had made reports about alleged illegalities in her department to a state investigator she did not directly or even indirectly report to. Even though Casey's complaint was substantially similar to earlier complaints Casey had made to her direct supervisors, the court attached importance to the lack of any legal or contractual obligation to report to the State Attorney General: Casey did so because "she had lost faith that the [Defendants] would listen to her advice so she took her grievance elsewhere." *Id.*

Defendants, in their Reply, argue that Plaintiff's failure to allege that it was not part of his job responsibilities to conduct audits or report audit results to the State Auditor justifies dismissal. Reply at 2–3. But requiring Plaintiff to specifically allege that making reports to the State Auditor was not part of his duties as a road supervisor would be to require Plaintiff to make a formulaic recitation of the elements of a First Amendment claim, something specifically disallowed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Here, the only requirement is that Plaintiff allege specific facts that would allow a reasonable inference that making reports to the State Auditor was not part of his job description.

Plaintiff has satisfied this burden by alleging sufficient facts to allow an inference that he was not required to report to the State Auditor. After he realized his complaints about improper use of state funds would not be addressed by Defendants, Plaintiff took his grievances to the Office of the State Auditor, where he hoped his concerns would find better traction. He did this because he was exasperated, not because he was required by law. *See* Complaint ¶ 10 ("When it became clear that none of the Defendants were going to take any steps to address the illegal conduct…Plaintiff contacted the office of the New Mexico State Auditor[.]"). It is reasonable to infer that Plaintiff was not obliged—either by contract or under state law—to make such a complaint and this puts the facts here squarely within the ambit of *Casey*. Plaintiff's complaints

to the State Auditor fell outside his official duties as a road superintendent and therefore satisfy the first *Morris* factor.

(2) <u>Whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests</u>

Under this factor, the question is whether Plaintiff's "activities were sufficiently disruptive to eliminate the First Amendment's protection[.]" *Casey*, 473 F.3d at 1333. The *Casey* court phrased the test as whether the Plaintiff's conduct "threatened any of the work of [Plaintiff's] office, the morale of the Board, or even the Board's substantive decisions[.]" *Id.* Plaintiff unsurprisingly does not allege that his conduct disrupted workplace morale or efficiency. But neither do Defendants point out any reason why this Court should find that complaints about ongoing illegal conduct should be considered in any way disruptive. Like the plaintiff in *Casey*, Plaintiff here alleges that he only acted to ensure that Defendants complied with their State law obligations. *Id.*

The Court finds that Plaintiff has set forth factual allegations that could allow a reasonable inference that Defendants' interests in promoting the efficiency of their office did not outweigh Plaintiff's free speech interests.

(3) <u>The final two *Morris* factors are questions of fact to be determined at a future stage.</u>

The remaining two factors are (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the Defendants would have reached the same employment decision in the absence of the protected conduct. *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2001). Defendants argue that Plaintiff was not fired for any speech on matters of public concern, but because he made "erroneous" complaints that were not "respond[ed to] in the way plaintiff wished[.]" Motion to Dismiss at 7. But this is just to argue

that one reasonable inference is preferable to another equally plausible inference: that Defendants' decision to terminate Plaintiff's employment was caused by his protected conduct and that Defendants did not have any other reason to terminate his employment. Whether or not these inferences will find any evidentiary support is a question properly determined after a timely motion for summary judgment under Fed. R. Civ. P. 56 or a trial.

In sum, Plaintiff has made plausible allegations that Defendants terminated his employment as road superintendent in retaliation for statements that were protected by the First Amendment, and that Defendants' interest in efficient provision of public services does not outweigh Plaintiff's First Amendment rights. The Court will therefore deny Defendants' Motion to Dismiss Plaintiff's First Amendment claim.

## II. The Court has supplemental jurisdiction over Plaintiff's Whistleblower Act claim because it has not dismissed Plaintiff's First Amendment retaliation claim.

Defendants do not argue that Plaintiff has failed to state a claim for relief under the New Mexico Whistleblower Act, N.M. STAT. ANN. § 10-16C-1 *et seq.* (West 2013). Instead, Defendants argue the Court should dismiss Plaintiff's Whistleblower Act claim for lack of subject matter jurisdiction. Because the Court will deny Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim, it has supplemental jurisdiction over Plaintiff's Whistleblower Act claim under 28 U.S.C. § 1367.

**CONCLUSION**

Plaintiff's Complaint alleges facts that allow one to plausibly infer that Defendants took retaliatory employment actions against Plaintiff for conduct protected by the First Amendment. Accordingly, Defendant's Motion to Dismiss (Doc. No. 8) will be DENIED. Because this Court retains supplemental jurisdiction over Plaintiff's Whistleblower Act claim, Defendants' Motion to Dismiss will be DENIED as to that claim as well.

IT IS ORDERED THAT Defendant's Motion to Dismiss (Doc. No. 8) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE